UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


LAWRENCE S. SMITH,


v.                              Case No. 8:03-cr-54-T-17TBM
                                         8:06-cv-466-T-17TBM


UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant Lawrence S. Smith's 28 U.S.C. § 2255

motion to vacate, set aside, or correct an allegedly illegal sentence.  Civ Doc. 1; Doc. 340.

BACKGROUND

In February 2003, a federal grand jury indicted Lawrence S. Smith and six

codefendants in a forty-six count indictment. Doc. 19. The grand jury charged Smith with

the following offenses: conspiracy to commit identity theft, credit card fraud, bank fraud,

and mail fraud, in violation of 18 U.S.C. §§ 2 and 371 (count 1); unlawful monetary

transactions, in violation of 18 U.S.C. §§ 2 and 1957 (count 19); money laundering, in

violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i) (counts 20, 22); mail fraud, in violation of

18 U.S.C. §§ 2 and 1341 (counts 32-44); and possession of unauthorized access devices,

in violation of 18 U.S.C. §§ 2 and 1029(a)(3) (count 46). Doc. 19.

In August 2003, Smith pled guilty to counts 1, 19, 20, 35, 36, and 46. Doc. 163 (plea

agreement); Doc. 182 (change of plea hearing). As part of his plea agreement, Smith

- 1 -

waived, among other things, the right to appeal his sentence, "directly or collaterally, on any ground, . . . except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines . . . ." Doc. 163 at 11; Doc. 192 at 19-20.

After departing upward from Smith's guidelines range based on the nonmonetary harm caused by his offense and the inadequacy of Smith's criminal history category, this Court ordered Smith to serve 300 months each on counts 35 and 36; 120 months each on counts 19, 20, and 46; and 60 months on count one. Docs. 262, 264; Doc. 306 at 32-45, 52. The Court ordered all of the prison terms to run concurrently. Docs. 262, 264.

Smith filed a direct appeal from his sentence. Doc. 265. He argued that this Court had erred by departing upward from the guidelines range, and he attempted to challenge the Court's calculation of his guidelines range on various grounds. In Appeal No. 04-10019, the United States Court of Appeals for the Eleventh Circuit enforced the sentence appeal waiver and dismissed the appeal as to Smith's challenges to the calculation of the guidelines range. Doc. 334 (Exhibit A). The appellate court also affirmed this Court's upward departures under USSG §4A1.3 (criminal history) and USSG §2B1.1 (non-monetary harm). Doc. 334. The mandate issued on July 12, 2005. Doc. 334. In March 2006, Smith filed the instant motion under 28 U.S.C. § 2255. Doc. 340; Civ. Doc. 1. Because Smith filed his section 2255 motion within one year of the date his conviction became final, it is timely. See 28 U.S.C. § 2255.

FACTUAL BACKGROUND

Beginning in about April 1999, Smith, Carl Alpert, and others fraudulently acquired the personal identifying information and other information of individuals who were

incarcerated in federal and state prisons. Doc. 192 at 23-25; Doc. 163 at 13- 18; PSR ¶ 24 (Presentence Investigation Report). Using this personal information, the defendants established and used more than 150 credit card and bank accounts. Doc. 163 at 13-18; PSR ¶ 25; see, e.g., Doc. 163 at 14 (defendants established eleven bank accounts related to identity theft victim Craig Nunn).

One identity stolen by Smith and Alpert was that of Charles Cowart. Charles Cowart was incarcerated for killing his wife, Cathy Cowart; Charles Cowart hanged himself in jail. PSR ¶ 40; Doc. 317 at 16. Linda Lefevre was Cathy Cowart's sister; Lefevre became guardian to the Cowarts' two young children. Doc. 317 at 16. As trustee for the children, Lefevre attempted to collect life insurance proceeds and other assets that should have passed to the Cowarts' children. Doc. 317 at 16-17. The defendants, however, had caused a change of address form to be submitted to the post office in connection with Cowart, which enabled Alpert to collect the check from the insurance policy on Cathy Cowart's life. Doc. 317 at 16-18; PSR ¶ 40.

As part of the criminal scheme, the defendants used residential, business, and fictitious addresses for billing addresses on the fraudulently established bank accounts. Doc. 163 at 15-16; PSR ¶ 26. It was important for Smith and Carl Alpert to control the locations to which credit card and checking account transaction records were sent in order to reduce the possibility that the fraudulent transactions would be detected by the inmates' families. Doc. 163 at 15-16; PSR ¶¶ 35-39. In order to give legitimacy to the addresses, telephone service in the names of the identity theft victims' was established to correspond with the mailing addresses. PSR ¶ 39. As a result of this criminal activity, twenty-three financial institutions incurred a total loss exceeding $1.6 million. PSR ¶¶ 25, 70.

SENTENCING

The probation office calculated Smith's total offense level at 33,[1] PSR ¶¶ 67- 77, and his criminal history category at VI (based on thirteen criminal history points). PSR ¶ 93. In addition to Smith's scored criminal history, he had a list of unscored sentences and other criminal conduct for which he had not been charged, PSR ¶¶ 80, 81, 87, 89, 90, 95, 96, 97, 98, 100, 101, 102, as well as two outstanding warrants for violation of probation, PSR ¶ 112. The probation office noted the potential for an upward departure on the ground that Smith's criminal history category did not adequately reflect his past criminal conduct or the likelihood that he will commit other crimes (USSG §4A1.3), PSR ¶ 152, and/or on the ground that his offense level understated the seriousness of the offense because of substantial non-monetary harm that had resulted from his crimes (USSG §2B1.1, comment. (n.18(A)(ii)), PSR ¶ 153.

This Court heard evidence and argument regarding Smith's and the Government's objections to the PSR. Doc. 317 at 16-238; Doc. 306 at 3-21. Linda Lefevre (Cathy Cowart's sister) told this Court how Smith's crimes had affected her, her niece and her nephew. Doc. 317 at 17-18. This Court also received letters from other identity theft victims and/or spouses of the identity theft victims relating the problems they had encountered as a result of Smith's and his codefendants' crimes. See Doc. 306 at 6-8. The Government then argued on behalf of the two grounds for upward departure that had been identified in the PSR: (1) under section 2B1.1 on the basis of the non-monetary harm the identity theft

---

[1] This calculation did not include 36 identity theft victims because "by definition the harm suffered by them is not pecuniary harm or actual loss, as defined by the guidelines." PSR ¶ 69; see also PSR ¶ 62 (describing the harm to the identity theft victims and their families).

offenses had caused to the spouses and children of the inmates whose identities Smith and his codefendants had stolen, Doc. 306 at 22-25; and (2) under section 4A1.3 because of the inadequacy of Smith's criminal history category, Doc. 306 at 27. Noting that the arguments for upward departure were "well-taken" in light of the "entire presentence report," this Court upwardly departed under section 4A1.3 because Smith's criminal history category "inadequately expressed" the "aggravating circumstances" of Smith's background and under section 2B1.1 because of Smith's "callus, uncaring, unremorseful attitude towards the harm that he has done to other people." Doc. 306 at 40.

## OTHER RELEVANT FACTS

On May 23, 2003, the Government sent to defense counsel a proposed plea agreement. Exhibit B. On Friday, June 6, 2003, the Government faxed to defense counsel a follow-up letter in which the prosecutor noted that defense counsel had advised the prosecutor that morning "that your client wishes to proceed to trial." Exhibit C. The prosecutor explained the significant benefits of the plea agreement and stated that "[w]e will also agree to refrain from seeking an upward departure from the applicable guideline range." Exhibit C. Pursuant to the letter, "the plea offer previously extended" would remain open until June 11, 2003, at 12:30 p.m. Exhibit C.

Notwithstanding the offer to refrain from seeking an upward departure, the May 23 proposed plea agreement that remained open until June 11 expressly "reserve[d] the right to support and defend any decision that the Probation Office or the Court may make with regard to [Smith's] sentencing guidelines or sentence, whether or not such decision is consistent with the government's recommendations contained herein." Exhibit B at 10. The agreement also expressly stated that this Court was not bound by the parties'

recommendations, that the Court was free to accept or reject recommendations after reviewing the PSR, and that the Court would decide Smith's sentence with the assistance of the probation department. Exhibit B at 9-10.

In its response the Government states that defense counsel, Daniel Daly, has advised the undersigned that, in the normal course of business, he telephones or visits a client to communicate any plea offers received from the government. On Friday, June 6, however, he was preparing to begin a trial in federal court the following Monday morning and, therefore, has no recollection whether he communicated to Smith the contents of the June 6 letter. Mr. Daly does not recall whether he saw the letter prior to its expiration five days later.

Smith entered into a written plea agreement on July 3, 2003. Doc. 163. The plea agreement is virtually identical to the May 23 proposed plea agreement (except for a couple of factual admissions in the Factual Basis and the Government's position with regard to an adjustment for acceptance of responsibility). The July plea agreement did not contain a promise by the Government that it would refrain from recommending an upward departure.

THE PRESENT MOTION TO VACATE

Smith challenges his sentences on the ground that he received ineffective assistance of counsel in that counsel: (1) failed to communicate a particular plea offer and to memorialize various inducements for the guilty plea; (2) failed to "investigate the case [or] . . . prepare for the sentencing"; and (3) failed to raise certain claims on direct appeal. Smith's ineffective assistance of counsel claims are cognizable under section 2255 and are not procedurally defaulted. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003).

The Sixth Amendment right to counsel is the right to effective assistance of counsel.

McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 688 (1984); see also Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. United States v. Cronic, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. See Strickland, 466 U.S. at 690.  Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Strickland, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. See Chandler, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different.

United States v. Greer, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Rolling v. Crosby, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. Strickland, 466 U.S. at 697; Tafero v. Wainwright, 796 F.2d 1314, 1319 (11th Cir. 1986).

PLEA OFFER AND INDUCEMENTS

PLEA OFFER

Smith contends that his counsel failed to communicate to him the Government's June 6 offer to refrain from seeking an upward departure.[2] Civ. Doc. 2 at 2. This Court, however, need not address the performance prong of Strickland because Smith cannot demonstrate the requisite prejudice. See Coulter v. Herring, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995) (if defendant fails to show prejudice stemming from alleged errors of counsel, court may reject claim without determining whether counsel's performance was deficient); Tafero, 796 F.2d at 1319 (same).

Specifically, Smith cannot demonstrate a reasonable probability that, if counsel had communicated the June 6 offer (assuming for the sake of argument that he did not), and if Smith had accepted the term, and if the Government had refrained from recommending the upward departures, this Court would not have departed upward from the sentencing guidelines range on its own initiative. As Smith's plea agreement expressly stated, this

---

[2] Smith also complains that counsel failed to memorialize that offer in the plea agreement that Smith ultimately signed. That particular offer, however, had expired on June 11 and, so, there was nothing for counsel to have memorialized on July 3.

Court was not bound by the parties' recommendations and Smith's sentence was to be decided solely by the Court with the assistance of the probation department. Doc. 163 at 9-10. This Court had an obligation to make an independent assessment of the record in light of the statutory sentencing considerations, including the various grounds for departure enumerated in the sentencing guidelines and the policies behind those enumerated grounds. See 18 U.S.C. § 3553; USSG §5K2.0

In light of Smith's extensive criminal history, his offense conduct, and the victim impact stemming from his crimes, Smith cannot show that this Court would not have departed upwardly as it did. Indeed, in deciding to depart upwards, the Court noted the "inadequa[cy]" of Smith's criminal history category, the "aggravating circumstances" of Smith's background, and Smith's "callus, uncaring, unremorseful attitude towards the harm that he has done to other people." Doc. 306 at 40.

Moreover, a departure for non-monetary harm is intended to hold defendants, like Smith, accountable for the "'human' cost of identity theft . . . [which] include[s] emotional costs, as well as various financial and/or opportunity costs," and "the harm to reputation, inconvenience, and other difficulties resulting from the offense." S. REP. 105-274 (1998), cited in United States v. Karro, 257 F.3d 112, 121 (2nd Cir. 2001). Without a departure on this ground in this case, Smith would have escaped accountability for the substantial non-monetary harm he caused. In summary, it is not enough that Smith has alleged he would have accepted the June 6 offer by the Government to refrain from recommending an upward departure[3]; he must show a reasonable probability that the Court would not have

---

[3] The Government, however, would have been free to support a recommendation by the probation office. See Doc. 164 at 9-10.

departed on its own initiative. On this record, Smith cannot make this showing. He, therefore, is not entitled to relief on this ground, even assuming his counsel had failed to communicate the offer.

INDUCEMENTS FOR PLEA

Smith also contends that he was induced to plead guilty by the Government's representation that it would "seek a range of 155 to 188 months," but that his counsel failed to memorialize that promise. Civ. Doc. 2 at 4. Smith offers nothing more than his bare allegation that the Government, in fact, made this representation; importantly, he does not explain the timing of or the circumstances surrounding the representation.

In any event, Smith has not demonstrated the requisite prejudice. Contrary to his suggestion that he must show that his sentence would have been different, he must establish that, but for the alleged inducement, he would not have pled guilty but would have insisted on going to trial. Smith received the proposed plea agreement in May 2003; it did not contain this alleged inducement. Yet, in July, he signed, virtually, the same agreement (initialing every page), which expressly stated that any sentencing recommendations were not binding on the Court and that the Court would calculate Smith's sentence in accordance with the guidelines. Doc. 163 at 9- 11. Smith also agreed that the written plea agreement "constituted the entire agreement between the [parties]." Doc. 163 at 20.

During the plea colloquy, the United States Magistrate Judge explained that, regardless of any sentence Smith might be expecting, his sentence would be calculated by this Court and that calculation would be controlling. Doc. 192 at 15. Smith did not express a different understanding; indeed, he expressly stated that he understood. Doc. 192 at 15. The magistrate judge also carefully explained to Smith that the Government

would be permitted to "speak in aggravation against you at your sentence." Doc. 192 at 18-19. Smith said that he understood. Doc. 192 at 19.

"[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). The declarations of the defendant in open court carry a strong presumption of verity which is not overcome by the subsequent presentation of conclusory and contradictory allegations. Id.

Importantly, Smith pled guilty in exchange for promises that the Government would dismiss three felony counts and would not file further charges against him, including for the illegal activities in which Smith had continued to engage even after he had been arrested and incarcerated. Doc. 163 at 4, 5. Smith has not demonstrated that, but for this alleged representation by the Government, he would not have pled guilty and would have insisted on going to trial.

Next, Smith contends that his counsel failed to memorialize in the plea agreement the Government's representation that it might dismiss count 36. Civ. Doc. 2 at 4. As support for his allegation, he cites to an exchange at the sentencing hearing wherein defense counsel explains: "[A]s we were entering the plea, [the prosecutor assured] that he would look into Count 36 and determine whether or not Mr. Smith was in jail at the time and whether or not he could actually make a case. And he assured me personally that he would look into that and if, in fact, he was in jail and could not make a case, he would dismiss that count." Doc. 317 at 223.

This exchange was in relation to an objection to the factual accuracy of the PSR.

Doc. 317 at 220-30. Specifically, Smith objected to inclusion in the PSR of the conduct charged in count 36, explaining that, during pre-plea negotiations, the prosecutor had stated he would dismiss count 36 if he determined that Smith had not been involved in the charged conduct. Doc. 317 at 223. As this Court noted, however, the count had not been dismissed (inferring that the prosecutor had determined that Smith, in fact, had been involved). See Doc. 317 at 223. Importantly, after these negotiations, Smith pled guilty to count 36 and he admitted to the factual basis supporting the count. See Doc. 163 at 1, 17-20.

Smith has not shown that counsel failed to memorialize a term of a plea offer that had induced the guilty plea. The record clearly shows that the prosecutor did not promise to dismiss count 36; he said only that he would look into the circumstances surrounding count 36 and would dismiss the count if he determined that Smith had not been involved. Not only did the prosecutor determine that Smith had been involved, Smith admitted his guilt as part of his guilty plea. Doc. 163 at 17-20.

INVESTIGATION AND PREPARATION

Smith contends that his trial counsel failed to adequately prepare for the sentencing hearing, identifying six examples of allegedly deficient performance by counsel at sentencing. Civ. Doc. 2 at 6. All of Smith's complaints, however, relate to the calculation of his sentence under the guidelines. Because Smith waived guidelines-related issues as part of his plea agreement, Doc. 163 at 11; Doc. 192 at 19-20, and that waiver was enforced by the Eleventh Circuit on direct appeal, Doc. 334 at 5, he waived the claims of ineffective assistance of counsel he raises here. See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir.), cert. denied, 126 S. Ct. 246 (2005).

-12-

A defendant's waiver of the right to appeal "directly or collaterally" is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams, 396 F.3d at 1342 & n.2. In particular, if the complaint underlying the ineffective assistance claim was waived by a defendant's plea agreement, then the ineffective assistance claim also was waived. See Williams, 396 F.3d at 1342; United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (although "dress[ed] up" as Sixth Amendment claim, defendant really was challenging correctness of sentence under guidelines and, therefore, was barred by plain language of plea agreement; to allow his claim would be to "render[ ] meaningless" such plea agreement waivers). Because the complaints underlying Smith's ineffective assistance of counsel claims were waived by his plea agreement, he is not entitled to review of these claims.

## UPWARD DEPARTURES

Smith next contends that his counsel failed to object to the recommendations for upward departure or to the lack of adequate notice of the departure for nonmonetary harm. Civ. Doc. 2 at 10. Defense counsel, however, did object to the recommended departures but was overruled. Doc. 306 at 25-26, 31. Notice that non-monetary harm provided a potential ground for departure was identified in the PSR dated December 16, 2003. PSR ¶ 153. On direct appeal, the Eleventh Circuit held that the notice had been adequate, as evidenced by the fact that defense counsel had presented argument at sentencing on the merits of his objection. Doc. 334 at 11-12. Because the Eleventh Circuit has determined that the notice was adequate, Smith cannot show deficient performance by counsel in

failing to object at sentencing to a lack of notice. See United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (claims raised and disposed of in previous appeal are precluded from reconsideration in section 2255 proceeding).

ASSISTANCE OF COUNSEL ON APPEAL

BOOKER CLAIM

Smith asserts that his counsel was ineffective on appeal because he failed to provide briefing under United States v. Booker, 543 U.S. 220 (2005).[4] Civ. Doc. 2 at 10-11. Smith, however, cannot demonstrate prejudice because the issue would have been deemed waived by his plea agreement (discussed above) even if counsel had provided briefing. See United States v. Frye, 402 F.3d 1123, 1129 (11th Cir.), cert. denied, 125 S. Ct. 2986 (2005); United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir.), cert. denied, 125 S. Ct. 2279 (2005); United States v. Rubbo, 396 F.3d 1330, 1331-32, 1333-35 (11th Cir.), cert. denied, 126 S. Ct. 416 (2005).

USE OF ARREST HISTORY

Finally, Smith complains because his counsel failed to argue on appeal that, in deciding to depart upward under section 4A1.3, this Court had improperly used Smith's arrest history and the unscored Seminole County and Palm Beach County convictions (PSR ¶¶ 89, 90). Civ. Doc. 2 at 12. Smith, however, has not shown deficient performance by counsel or resulting prejudice.

Smith correctly points out that a district court may not consider "a prior arrest record

---

[4] Defense counsel filed his brief before Booker issued; he summarily raised a challenge under Blakely v. Washington, 542 U.S. 296 (2004), but acknowledged that it was foreclosed under then-governing precedent United States v. Reese, 382 F.3d 1308, 1311 (11th Cir. 2004). The Eleventh Circuit issued its decision after Booker and ruled that Smith had abandoned the issue by failing to provide appropriate briefing.

- 14 -

itself" when departing from the guidelines. See USSG §4A1.3. The Eleventh Circuit, however, has interpreted the rule to mean that an "arrest record standing alone is not sufficiently reliable to support a departure." United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998). In any event, this Court's upward departure was not based on arrests, standing alone or otherwise. In addition to Smith's scored prior sentences PSR ¶¶ 82, 83, 84, 85, 86, 88, Smith had nine unscored prior sentences, PSR ¶¶ 80, 81, 87, 89, 90, 95, 96, 97, 98. These were not arrests, they were unscored dispositions. Smith's "other" criminal conduct included an arrest for theft, PSR ¶ 100; uncharged fraudulent activities involving computers and numerous credit cards between 1995 and 1996, PSR ¶¶ 101, 102; various supervised release violations, PSR ¶¶ 83, 85, 89; and two outstanding warrants for probation violations, PSR ¶ 112. The nine unscored sentences were more than sufficient to support the two-level upward departure even without considering the "other" criminal conduct.

Notably, Smith did not question the reliability of the facts contained in the PSR.[5] "When a defendant has an opportunity to and fails to object to the facts, information, and records used to support a departure, there is little reason to question a district court's decision." United States v. Torres, 977 F.2d 321, 330 (11th Cir. 1992); accord United States v. Williams, 989 F.2d 1137, 1142 (11th Cir. 1993) (where defendant has not objected to accuracy of criminal history as reported in PSR, district court may consider arrest record in combination with other circumstances contained in PSR). Because Smith has failed to demonstrate that this Court relied solely on an arrest record to support its

---

[5] Even accepting the inaccuracies in the PSR that Smith alleges in his section 2255 motion, his remaining substantial criminal history more than justified this Court's upward departure.

departure from the criminal history category, he fails to demonstrate a deficiency by counsel in failing to raise this complaint on appeal.

Smith also complains that counsel failed to raise on appeal the Court's allegedly improper consideration of the Seminole County and Palm Beach County dispositions in its decision to depart upwards; according to Smith, these dispositions should not have been considered in relation to the departure because they constituted relevant conduct to the instant offense, not prior bad conduct. Regardless of whether the two dispositions are related to the offenses of conviction in the case underlying this proceeding, Smith fails to demonstrate that they were used in the calculation of his criminal history category or in any calculation used to determine his guidelines range. Smith, therefore, has not demonstrated an error by this Court that defense counsel should have raised on appeal. Moreover, because Smith has failed to demonstrate that the outcome of his appeal would have been different if counsel had raised this matter, he has failed to satisfy the requirements of Strickland.

The Court does not find Smith's arguments in his reply persuasive.

Accordingly, the Court orders:

That Smith's motion to vacate (Civ Doc. 1; Doc. 340) is denied.  The Clerk is directed to enter judgment against Smith in the civil case and to close that case.

IT IS FURTHER ORDERED that defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

To make such a showing, defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke,  542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on August 18, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA:  Peggy Morris Ronca

Pro se: Lawrence S. Smith